UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KRISTIN LINDSTROM-HERNANDEZ,

          Plaintiff,

    v.                           Case No. 6:11-cv-06275-HA

                                 OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

_____

HAGGERTY, District Judge:

     Plaintiff Kristin Lindstrom-Hernandez seeks judicial review of a final decision by the

Commissioner of the Social Security Administration denying her application for Supplemental

Security Income (SSI). This court has jurisdiction to review the Commissioner's decision under

42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is reversed and

remanded for further proceedings.

OPINION AND ORDER - 1

## STANDARDS

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe impairments which qualify as severe enough to be construed as *per se* disabling. 20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings for a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th

OPINION AND ORDER - 2

Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner

OPINION AND ORDER - 3

meets this burden, the claimant is deemed not disabled for purposes of determining benefits

eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and

its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g);

*Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial

evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108

F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is

upheld even if the evidence is susceptible to more than one rational interpretation, so long as one

of the interpretations supports the decision of the Administrative Law Judge (ALJ). *Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing

court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in

instances where the evidence supports either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035

(9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence must be set aside if the

Commissioner did not apply the proper legal standards in weighing the evidence and making the

decision. *Reddick*, 157 F.3d at 720.

## FACTS

Plaintiff was forty-two years old at the time of the ALJ's decision. Plaintiff did not

complete high school, but earned a GED in 1985. Plaintiff has previously worked as a certified

OPINION AND ORDER - 4

nurse's assistant.

Plaintiff applied for SSI benefits on April 30, 2008. Plaintiff alleged disability from a number of impairments, including bipolar disorder, post traumatic stress disorder, personality disorder, and dysthymic disorder. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held on November 2, 2009. The ALJ heard testimony from plaintiff, plaintiff's case worker, and a vocational expert (VE). On November 23, 2009, the ALJ issued a decision denying plaintiff's application for benefits. The Appeals Council denied plaintiff's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision.

## SUMMARY OF ALJ's FINDING

At step one, the ALJ found that plaintiff has not engaged in SGA since her alleged disability onset date. Tr. 18, Finding 2.[1]

At step two, the ALJ found that plaintiff has the following medically determinable severe impairments: bipolar disorder, post traumatic stress disorder, personality disorder, and polysubstance abuse in remission. Tr. 18, Finding 3.

At step three, the ALJ found that plaintiff's impairments, singly or in combination, do not meet or equal the requirements of any listed impairment. Tr. 18, Finding 3.

The ALJ determined that plaintiff has moderate but not marked difficulties in daily living; social functioning; and concentration, persistence, and pace. Tr. 19. The ALJ also found that plaintiff had no history of prolonged, repeated periods of decompensation. Tr 20. The ALJ

---

[1] Tr. refers to the Transcript of the Administrative Record.

OPINION AND ORDER - 5

found that plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and carry out simple, routine tasks consistently; she may have a greater number of tardies or absences, but not beyond what is normally acceptable in the workplace; she can consistently complete a forty-hour workweek; but she is best suited to an environment requiring only occasional, brief, and superficial public and coworker contact. Tr. 20, Finding 4.

At step four, the ALJ found that plaintiff has no past relevant work. Tr. 24, Finding 5.

At step five, the ALJ, after consulting with the VE, found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, such as kitchen helper, bagger, grader/sorter, and assembler. Tr. 25, Finding 9.

**DISCUSSION**

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further proceedings or for an award of benefits due to a number of alleged errors including: (1) improperly constructing plaintiff's RFC and propounding improper questions to the VE, (2) improperly discrediting plaintiff's testimony, (3) failing to fully accept the opinion of Dr. Beikel, and (4) improperly rejecting the opinions of Devlyn Young and Amber Benson.

**1.    Vocational expert testimony**

Plaintiff asserts that the Commissioner failed to meet his burden of proof that plaintiff can perform "other work" in the national economy. The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical question that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). In hypothetical questions posed to a VE, the ALJ must only include those limitations supported by substantial evidence.

OPINION AND ORDER - 6

*Robbins v. Social Security Administration*, 466 F.3d 880, 886 (9th Cir. 2005). Conversely, an ALJ is not free to disregard properly supported limitations. *Id.* The ALJ must then determine whether, based on substantial evidence, the claimant can find work in the national economy. *Tackett*, 180 F.3d at 1097. In this case, the ALJ erred by posing inadequate hypotheticals to the VE. Additionally, the VE's testimony did not provide substantial evidence that plaintiff can find work in the national economy.

The ALJ improperly omitted portions of the RFC when posing his hypothetical to the VE. The ALJ's hypothetical stated that plaintiff had no physical restrictions, could understand, remember and carry out simple, routine tasks consistently, and could consistently complete a forty-hour work week. Tr 71. The ALJ made no mention of what effect absences might have on a claimant's ability to sustain employment, although the RFC specifically states that plaintiff would have a greater than average number of absences.[2] Similarly, the ALJ failed to question the VE regarding plaintiff's difficulty with personal interaction, despite the fact that plaintiff's RFC limits her to brief, superficial coworker and public contact.

Based on the ALJ's hypothetical, the VE responded that such a person could perform the jobs of a kitchen helper, bagger, grader/sorter, and assembler. *Id.* The ALJ then asked the VE whether, assuming that person were late to work two to three times a month, they would be able to "sustain gainful employment." *Id.* The VE replied that if the person were able to get a job, they "would not be able to maintain the job." Tr. 72. It is unclear based on the VE's testimony

---

[2] The court is also concerned with the ALJ's construction of the RFC. Plaintiff's absenteeism problem seems at odds with the assertion that she can "consistently perform a forty-hour workweek." Furthermore, the ALJ's statement that plaintiff's absences and tardies are "not beyond what is acceptable in the workplace" is conclusory and unsupported by the VE's testimony.

OPINION AND ORDER - 7

whether, once informed of plaintiff's potential tardiness, she would be able to perform the jobs listed above. It is also unclear whether the VE would have testified that plaintiff could work under the totality of plaintiff's restrictions, including the likelihood of absences and difficulty with interpersonal contact. In fact, the VE's responses to questions posed by plaintiff's attorney reflect plaintiff's inability to perform the jobs originally listed by the VE. When questioned about the contact required in those positions, the VE explained that the kitchen helper position would require "very close," "more than superficial" coworker contact, while the bagger position would require "quite a bit" of public contact. Tr. 79. The VE also testified that no more than two to three absences per month would be permitted in any of the listed jobs. Tr. 76.

Because the ALJ's hypothetical did not adequately represent plaintiff's RFC, and because the VE's responses did not clearly identify what work plaintiff could do under the totality of her impairments, the Commissioner failed to meet his burden of proof that plaintiff could find work in the national economy. However, given the confusion created by the ALJ's questioning, it is not clear whether the VE would identify jobs when presented with an appropriate RFC.

**2.    Credibility determination**

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not credible because it was not supported by the medical record, which identified some short periods of improvement in plaintiff's mental state. Tr. 22. Additionally, a November 2008 evaluation by Dr. Beikel revealed that some of plaintiff's statements were in conflict with medical records and that plaintiff may have been malingering. Tr. 489. Plaintiff argues that although the record shows periods of improvement, the periods were brief and plaintiff's mental state remained severely impaired during those times. Plaintiff

OPINION AND ORDER - 8

also argues that Dr. Beikel's report, while discussing the possibility of malingering, also noted
significant impairment. Plaintiff argues that the ALJ erred in failing to account for these
impairments when assessing her credibility.

A claimant bears the burden of producing objective medical evidence of an underlying
impairment that could reasonably be expected to produce some degree of the alleged symptoms.
*Benton,* 331 F.3d at 1040-1041. The ALJ can then reject the claimant's testimony only upon (1)
finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so.
*Id.* (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986)). A claimant's poor work
history, inconsistent statements about the claimant's history of substance abuse, and
contradictions between a claimant's complaints and his or her self-reported activities are clear
and convincing reasons for rejecting a claimant's testimony. *Thomas*, 278 F.3d at 959 (9th Cir.
2002); *Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010).

The evidence of malingering provided the ALJ with a sufficient basis to properly
discredit plaintiff's testimony. The ALJ also identified some conflicts between plaintiff's self-
reported activities and medical evidence in the record. However, the court has concerns about
the ALJ's treatment of plaintiff's testimony in light of evidence provided by caseworker Devlyn
Young and nurse practitioner Amber Benson. Young has worked with plaintiff for more than
three years and sees her on a weekly basis. Benson is plaintiff's treating physician. Neither
Young nor Benson found plaintiff to be malingering, rather, both found evidence of severe
impairment that corroborates plaintiff's testimony. Additionally, Dr. Beickel noted impairments
in plaintiff's functioning despite her conclusion that plaintiff may also have been malingering to
some extent.

OPINION AND ORDER - 9

### 3.    Dr. Beickel's opinion

Plaintiff alleges that the ALJ improperly excluded portions of Dr. Beickel's opinion when formulating the RFC assessment. Specifically, plaintiff points to Dr. Beickel's determination that plaintiff would have a difficult time sustaining concentration, attention and persistence, and that her ability to engage in social interaction should be considered *in situ*. Tr. 493.

Plaintiff's social skills were addressed in the ALJ's RFC assessment. The ALJ specifically noted that plaintiff should be limited to occasional, brief, superficial public and coworker contact. Tr. 20. The ALJ did not, however, include plaintiff's concentration problems in the RFC. The ALJ noted plaintiff's attention problems in step three of the sequential analysis. Tr. 17-19. The ALJ then explained that the step four RFC assessment reflects the degree of limitation discussed in step three, thereby incorporating the step three analysis into the RFC. Tr. 20.

However, when formulating an RFC, an ALJ must consider all of a claimant's impairments, even those that are not severe. 20 C.F.R. § 416.920(e). While it appears that the ALJ considered plaintiff's concentration problems, and may have incorporated those considerations into the step four analysis, those considerations are not reflected in the RFC. In addition to reasons mentioned above, this omission raises questions about the ALJ's construction of the RFC assessment.

### 4.    Rejection of "other source" testimony

Plaintiff argues that the ALJ erred in rejecting the testimony of Devlyn Young, plaintiff's case worker, and Amber Benson, plaintiff's treating nurse practitioner. The ALJ rejected the testimony on the grounds that it was inconsistent with other medical evidence and because it

OPINION AND ORDER - 10

qualifies as "other source" evidence rather than "acceptable medical source" evidence, and
therefore carries less weight. Tr. 24.

      Nurse practitioners, such as Benson, and caseworkers, such as Young, are considered
"other sources," rather than "acceptable medical sources," for purposes of evaluating their
testimony in social security cases. 20 C.F.R. § 416.913 (a) and (d). Generally, the ALJ can give
less weight to the testimony of "other sources" because "acceptable medical sources" are the most
qualified health care professionals. Social Security Ruling (SSR) 06-03p. However, since there
is a requirement to consider all relevant evidence in an individual's case record, the case record
should reflect the consideration of opinions from medical sources who are not "acceptable
medical sources" and from "non-medical sources" who have seen the claimant in their
professional capacity. *Id.* The adjudicator generally should explain the weight given to opinions
from these "other sources." *Id.*

      As "other sources," Young and Benson are considered lay witnesses, and the ALJ must
provide germane reasons for rejecting lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001). One reason for which an ALJ may discount lay testimony is because it conflicts
with medical evidence. *Id.* Here, the ALJ found that Young's testimony that plaintiff was
"markedly" limited in several areas conflicted with evidence from state medical consultants
finding plaintiff only "moderately" limited. Tr. 24. Similarly, the ALJ noted that Benson's
testimony that plaintiff was both "markedly" and "extremely" limited in several areas was
contradicted by an examination performed in the same month revealing plaintiff's mental status
was within normal limits. Tr. 24.

      It appears, however, that at least some of the medical evidence used to discredit Young
and Benson came from Young and Benson's own evaluations. The September and November

OPINION AND ORDER - 11

2009 evaluations noting plaintiff's "normal" appearance were performed by Benson; it appears that despite plaintiff's noted improvement, Benson still found plaintiff extremely limited in some areas. Plaintiff's regular changes in functioning may be explained by her bipolar disorder.

It is also worth noting that, depending on the particular facts in a case, opinion testimony from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source." SSR 06-03p. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often and has provided better supporting evidence and a better explanation for his or her opinion. *Id.* Similarly, an opinion from a "non-medical source" who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source. *Id.* For example, this could occur if the "non-medical source" has seen the individual more often and has greater knowledge of the individual's functioning over time. *Id.*

This rationale should seemingly apply when weighing the testimony of Amber Benson and Devlyn Young, especially as Young has had weekly contact with plaintiff for over three years, and Benson is plaintiff's treating physician. It seems, however, that the ALJ gave no consideration to these factors.

For the reasons stated above, the Commissioner's decision is reversed and remanded for further proceedings. A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this matter, this court concludes that outstanding issues

OPINION AND ORDER - 12

remain that must be resolved before a determination of disability can be made.

This court's review of the ALJ's decision indicates that upon remand, this case could benefit from a fresh set of eyes. Accordingly, this matter shall be heard before a different ALJ, who shall reconsider the testimony of Devlyn Young, Amber Benson, and Dr. Sharon Beickel in assessing plaintiff's RFC and credibility. Additionally, the ALJ shall question a VE regarding every limitation listed in plaintiff's RFC to determine if plaintiff can find work in the national economy.

## CONCLUSION

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner denying Kristen Lindstrom-Hernandez's application for disability benefits must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this ruling and the parameters provided herein.

IT IS SO ORDERED.

DATED this 9th day of October, 2012.

Ancer L. Haggerty

United States District Judge

OPINION AND ORDER - 13